UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:18-cr-4 |
| v. ) | |
| ) | Judges McDonough/Steger |
| RICHARD T. ALLEN, JR. ) | |

**REPORT AND RECOMMENDATION**

**I.   Introduction**

This matter is before the Court on Defendant Richard T. Allen's ("Allen") Amended Motion to Suppress evidence. [Doc. 84].[1] Allen contends that a police officer who pulled him over for a traffic violation lacked probable cause to search his vehicle. Allen also alleges that, on a separate occasion, law enforcement agents conducted an illegal search of an apartment—not his apartment—although the agents obtained consent to search from the legal tenant of the apartment. The Government responds that both searches were lawful.

The Fourth Amendment to the United States Constitution secures the right to be free from unreasonable search and seizure. Against this backdrop, the Court must determine whether: (1) the police officer had probable cause to search Allen's car; (2) the tenant's consent to search her apartment was valid; and (3) Allen had a reasonable expectation of privacy in an apartment in which he was not a legal tenant.

For the reasons set forth below, Defendant's Amended Motion to Suppress will be **DENIED**.

---

[1] Allen filed his original Motion to Suppress on November 6, 2018 [Doc. 81] and his Amended Motion to Suppress on December 28, 2018 [Doc. 84]. The Amended Motion to Suppress superseded the original motion, so the Court dismissed the original motion as moot. [Doc. 87].

## II. Facts

### A. Search Incident to Traffic Stop

On January 25, 2016, Allen was driving his Lincoln Town Car when Chattanooga Police Department Officer Jamaael Noble pulled him over for having a tinted license plate cover in violation of Tenn. Code Ann. § 55-4-110(b). When Officer Noble approached the driver-side door, he noted that Allen was driving and had two passengers in the car. Allen rolled down his window. Officer Noble asked Allen for his driver's license and proof of insurance. Allen responded that his license was inside his jacket pocket and that his jacket was on the backseat. While speaking with Allen, Officer Noble smelled marijuana in the vehicle.

Officer Noble ordered Allen and the two passengers out of the car. Noble asked Allen about the marijuana odor in the car. Allen responded that he had smoked marijuana in the car an hour earlier, but the car contained nothing illegal. Noble reached into the backseat and retrieved Allen's jacket. He located Allen's license in the left jacket pocket. When he looked in the right jacket pocket, he found a white substance in a baggie. Noble field-tested the substance and discovered that it consisted of 8.1 grams of cocaine.

After finding the cocaine, Noble searched Allen's car. Inside the center console, he found a scale with white, powdery residue on it. Noble then placed Allen under arrest. When Allen arrived at the jail, officials searched him and discovered cash as well as another baggie of cocaine.

### B. Search of Apartment

Nearly a year later in early 2017, Allen and co-defendant Amanda Wynn were being surveilled by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") because they were suspects in a heroin and cocaine trafficking ring in Chattanooga. ATF Special Agent Adam Baldwin—who appeared in court at the hearing on this motion—testified that he was working a

joint investigation with the Chattanooga Police Department into an armed drug-trafficking organization. Agent Baldwin discovered that Allen was a supply source for cocaine and heroin as well as that Wynn distributed the drugs for Allen. Armed with this information, Agent Baldwin and other ATF agents set up several controlled drug buys with Wynn.

On February 23, 2017, ATF agents established surveillance on Wynn and Allen to conduct another controlled cocaine buy from Wynn. The ATF had learned from the U.S. Marshal service that there were active arrest warrants pending for both Allen and Wynn. Consequently, the ATF agents made plans to execute the warrants and arrest both Allen and Wynn immediately after the controlled drug buy. Surveillance revealed Allen picking up Wynn and others in a Pontiac Bonneville at Eastlake Court Apartments in Chattanooga. Allen drove to several locations, concluding his trip at an apartment complex located at 2001 South Lyerly Street in Chattanooga. Allen and his passengers waited in the parking lot until Brandon Edwards—a known associate of Allen—arrived and let himself into Apartment 217. At that point, Allen, Wynn, and others got out of the car and joined Edwards in the apartment.

During this time frame, an ATF confidential informant ("CI") contacted Wynn to make a controlled buy. Wynn instructed the CI to go to a location a short distance from the apartment. Wynn then left the apartment, met the CI, and sold the CI three ounces of powdered cocaine. The CI used ATF marked bills to make the buy so that the money could be tracked. Following that transaction, Wynn returned to apartment 217.

While surveillance of apartment 217 continued, law enforcement—including ATF agents, Chattanooga Police Officers, and U.S. Deputy Marshals—met nearby to create a plan to execute the arrest warrants for Wynn and Allen. They proceeded to the apartment complex, found Wynn in the breezeway, and immediately arrested her; Allen, meanwhile, was still in the apartment.

3

Law enforcement knocked on the door of apartment 217 and announced their presence. Allen responded that he would not open the door, so they forced entry into the apartment. The officers found Allen and another man, Gregory Brewer, lying face-down inside near the entrance. Allen and Brewer refused to stand, so officers picked up both men and took them into the breezeway. As officers escorted Allen outside, he repeatedly stated that it was not his apartment and that it belonged to some unidentified person who was at work. While being handcuffed, Allen told the officers that he had flushed marijuana and pills down the toilet before the arrest. Officers conducted a protective sweep of the apartment but did not find anyone else there.

Law enforcement officers were still present when the apartment's tenant, Shanteice Plummer, returned home. Plummer told the officers that she was the sole tenant of the apartment and that she had encountered problems with Brandon Edwards entering her apartment without permission while she was away. Plummer told them that she had not given Edwards a key. Plummer denied knowing Richard Allen personally but did recognize him as Brandon Edwards' associate. Plummer confirmed that she had not given either man permission to be in her apartment. The office manager for the apartment complex—who was also present—confirmed that Plummer was the sole tenant of apartment 217 and that Plummer had complained of Edwards' unauthorized entries into the apartment. As a result of these witness accounts—as well as the outstanding arrest warrant—Chattanooga Police arrested Richard Allen and also charged him with burglary.

Plummer then signed a consent form, permitting law enforcement to search her apartment. During the search, officers found a large number of plastic baggies, an unidentified pill in the toilet, and $1,200 in cash. The cash was hidden inside a pile of clothes and included marked ATF

bills from controlled drug buys. Agents also searched Allen's Pontiac Bonneville and found a cell phone, $500 in cash,[2] and documents reflecting that Allen was on federal supervised release.

While in jail that evening, Allen made several phone calls—one of which was to his brother. These phone calls, which originated from the jail, were both recorded and monitored by ATF agents. In the phone conversations, Allen stated that he had hidden several thousand dollars in Plummer's apartment in three locations: the right corner of the refrigerator; inside a pile of clothes;[3] and underneath a dresser. In each of these conversations, Allen tried to convince the call recipient—his brother and other acquaintances—to go to apartment 217 and retrieve his money.

Upon learning of the additional cash hidden in the apartment, ATF agents Baldwin and St. Louis, as well as a Chattanooga police officer, contacted Plummer and requested permission to perform another search of her apartment; she consented. When law enforcement arrived, Plummer was not there, but the apartment manager met them with a key. Before entering the apartment, Plummer arrived and reiterated her consent for them to search. Consistent with Allen's telephone calls, agents found large sums of cash underneath the refrigerator and a dresser. Included among the discovered cash were ATF marked bills from previous controlled buys of cocaine from Wynn.

As a result, the Government charged Allen with conspiracy to distribute cocaine and heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846. [Doc. 1].

Allen requests that the Court—under the Fourth Amendment—suppress the evidence obtained from the traffic stop as well as the evidence found at Plummer's apartment. The Government responds that no constitutional violation occurred: in the first instance, because

---

[2] The cash found in Allen's car did not match any of the ATF's marked bills.
[3] Allen was apparently unaware that agents had already uncovered $1,200 in cash in the pile of clothes during their initial search.

Officer Noble had probable cause to search Allen's jacket; and, in the second instance, because agents had Plummer's consent to search and Allen had no privacy interest in the apartment.

At the suppression hearing, Allen's attorney asked for leave to add additional briefing as to whether Allen had a privacy interest in Plummer's apartment under *Georgia v. Randolph*, 547 U.S. 103 (2006), which stands for the proposition that, if any occupant of a home objects to a search, the consent of another occupant is not sufficient to waive the requirement of a search warrant. The Court granted the request. On March 11, 2019, defense counsel filed a notice, indicating that "no additional proof will be filed with the Court regarding the Motion to Suppress . . . ." [Doc. 95]. Accordingly, briefing for Allen's Amended Motion to Suppress [Doc. 84] concluded at that time, and the matter became ripe for adjudication.

### III. Discussion

#### A. January 2016 traffic stop

##### 1. Tinted License Plate Cover

Allen argues that the police officer did not have probable cause for the January 2016 traffic stop and that the evidence seized during the stop should be suppressed. If the traffic stop were found to be illegal, Allen would have a good argument: "[a]n ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment. Accordingly, any evidence seized during an illegal traffic stop must be suppressed as fruits of the poisonous tree." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citations and internal quotation marks omitted). However, an officer may lawfully stop a car when probable cause exists to believe that a traffic violation has occurred or if there is reasonable suspicion of an ongoing crime. *Id.* at 748; *see United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010) (citing *Whren v. United States*, 517 U.S. 806,

810 (1996)) ("[T]here is nothing unreasonable about stopping a vehicle whose driver has just committed a traffic violation.").

In this case, Officer Noble pulled Allen over for having a tinted license-plate cover in violation of Tennessee Code Annotated § 55-4-110(b),[4] which provides:

> Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so to prevent the plate from swinging and at a height of not less than twelve inches (12″) from the ground, measuring from the bottom of the plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible. . . . No tinted materials may be placed over a license plate even if the information upon the license plate is not concealed.

Because a § 55-4-110 violation is considered an "ongoing" criminal offense, an officer need only possess reasonable suspicion that a vehicle's license plate violates the statute to justify an investigatory stop under the Fourth Amendment. *United States v. Simpson*, 520 F.3d 531, 542 (6th Cir. 2008) ("[T]he proper question is not whether [defendant] was, in fact, violating § 55-4-110(b) by having an illegible expiration date on his temporary tag. The question is whether [the officer] had an objectively reasonable suspicion that a violation of that statute was occurring.").

Officer Noble testified that he was able to observe the tinted cover over the rear license plate clearly while traveling behind Allen's car on a public road. This established reasonable suspicion to stop Allen's vehicle to investigate an on-going misdemeanor violation of a state traffic law. Tenn. Code Ann. § 55-4-110(b); *Simpson*, 520 F.3d at 541 ("Since failure to keep a license plate 'clearly legible' is an ongoing violation of § 55-4-110(b), the standard of reasonable suspicion applies."); *see also United States v. Alexander*, No. CRIM.A. 3:07-00256, 2008 WL 2714076, at *11 (M.D. Tenn. July 9, 2008), *aff'd*, 467 F. App'x 355 (6th Cir. 2012) (listing a

---

[4] Effective July 1, 2018, Tennessee has amended the numbering of the statute cited in T.C.A. § 55-4-110(a). 2018 Tennessee Laws Pub. Ch. 1023 (S.B. 2693). The amendment has no impact on this case.

number of state and federal court cases finding that a violation of Tenn. Code. Ann. § 55-4-110 provides an officer with at least reasonable suspicion to make a traffic stop).

### 2. Odor of Marijuana

After stopping Allen's vehicle for a traffic violation, Officer Noble searched the vehicle. Allen argues that the warrantless search of his vehicle was illegal and that the evidence found in the vehicle should be suppressed. Indeed, Fourth Amendment jurisprudence holds that warrantless searches, "are per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The question here is whether an exception exists that allowed the police officer to search the vehicle.

Among the "specifically established and well-delineated exceptions" is one that allows police to conduct warrantless searches of automobiles. *See Carroll v. United States*, 267 U.S. 132, 153 (1925). "[U]nder the well-known automobile exception, a warrantless search of a vehicle that has been stopped lawfully is permissible if the search is based upon probable cause." *United States v. Crumb*, 287 F. App'x. 511, 513 (6th Cir. 2008) (citation omitted). "'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is found to exist when there is a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *Id.* at 513 (quoting *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006)).

The circumstances encountered by Officer Noble when he conducted the traffic stop on Allen's vehicle justified the ensuing search. When he stood next to the car to ask Allen for his driver's license and registration, Officer Noble smelled marijuana. The Sixth Circuit has consistently held that "the detection of a narcotic's odor, by itself, is sufficient to provide probable cause to conduct a lawful search of a vehicle." *Id.* at 514. This includes marijuana. *See, e.g.*,

*United States v. Avant*, 650 F. App'x 890, 892 (6th Cir. 2016) (smell of marijuana alone is sufficient to establish probable cause to search automobile); *United States v. McCaster*, 466 F. App'x 443 (6th Cir. 2011) (marijuana odor coming from a car gives rise to probable cause); *United States v. Foster*, 376 F.3d 577, 583–84 (6th Cir. 2004) (officer has probable cause to search vehicle regardless of whether the officer smelled fresh or burnt marijuana); *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002) (observing that "[t]his court has held that an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search"); *United States v. Garza*, 10 F.3d 1241, 1246 (1993) (probable cause existed where an officer smelled marijuana coming from a vehicle).

Officer Noble's probable cause was further strengthened by Allen's admission that he had smoked marijuana in the car an hour earlier. *See United States v. Bailey*, 407 F. App'x 27, 29 (6th Cir. 2011) (finding that officers had probable cause to search a vehicle because the officers smelled marijuana and "defendant confirmed . . . that they had smoked marijuana prior to driving that day, and the smell could have been on someone's clothes.").

Because Officer Noble smelled marijuana—and Allen admitted to smoking it in the car— probable cause existed to justify a search of Allen's vehicle. In the course of that search, Officer Noble was justified in searching the pockets of Allen's jacket to look for further evidence of a crime. *See Crumb*, 287 F. App'x at 514 ("It is clear that upon smelling the marijuana odor and seeing the marijuana cigarette, the police officers had reasonable grounds to believe that further evidence of a crime may be found inside the vehicle.") (referencing *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)); *see also United States v. Burnett*, 791 F.2d 64, 67 (6th Cir. 1986) (holding that when a small bag of marijuana was found on the floor of the car, the officer "had every right to search the passenger area of the car, the trunk, and any and all containers which

might conceal contraband"); *United States v. Mans*, 999 F.2d 966 (6th Cir. 1993) (holding that a marijuana cigarette and a sum of cash provided probable cause to search the trunk of a car).

Officer Noble's discovery of a white, powdery substance in a baggie inside Allen's jacket pocket confirmed that Allen may have been involved in drug distribution or consumption. *See Crumb*, 287 F. App'x at 514. With probable cause buttressed by that discovery, Officer Noble searched the remainder of the car, finding a scale with white, powdery residue on it. *See Arizona v. Gant*, 556 U.S. 332, 347 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820–821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), authorizes a search of any area of the vehicle in which the evidence might be found.").

The Court finds that Officer Noble's search was supported by probable cause and falls squarely within the parameters of the "automobile exception." *See Crumb*, 287 F. App'x. at 513 ("Although searches must normally be conducted pursuant to a warrant, under the well-known automobile exception, a warrantless search of a vehicle that has been stopped lawfully is permissible if the search is based upon probable cause.").

For the foregoing reasons, it is **RECOMMENDED** that Allen's motion to suppress the evidence discovered during the January 2016 traffic stop be **DENIED**.

### B. Apartment Search

#### 1. Allen had no privacy interest in the apartment

Allen next argues that the search of apartment 217 violated the Fourth Amendment and that the evidence found during the search should be suppressed. The Fourth Amendment—which protects against unreasonable search and seizure—has been interpreted to "draw a firm line at the entrance of the house," such that a warrantless search and seizure inside a residence is

10
Case 1:18-cr-00004-TRM-CHS  Document 98  Filed 07/11/19  Page 10 of 13
PageID #: 627

"presumptively unreasonable." *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1511 (6th Cir. 1988) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971)).

However, "[w]hen challenging the admission of evidence under the Fourth Amendment, it is the defendant's burden to show that he had a legitimate expectation of privacy in the area searched or items seized." *United States v. Mathis*, 738 F.3d 719, 729 (6th Cir. 2013) (citing *United States v. Mastromatteo*, 538 F.3d 535, 544 (6th Cir. 2008)). In other words, he "must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . . ." *United States v. Noble*, 762 F.3d 509, 526 (6th Cir. 2014) (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)). To meet this requirement, "the defendant must show (1) that he had a subjective expectation of privacy, and (2) that his expectation was objectively reasonable." *United States v. Washington*, 573 F.3d 279, 282-83 (6th Cir. 2009) (citing *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000)). "An expectation is objectively reasonable only when it is one that society is prepared to recognize as legitimate." *Id.* (internal quotation marks omitted).

In this case, Allen did not have a constitutionally-protected privacy interest in Shanteice Plummer's apartment. Allen's attorney asserts that, even though Allen was not the apartment's owner or tenant, he still had a reasonable expectation of privacy in the apartment. Certainly, "[a] person[,] [such as an overnight guest,] may acquire a reasonable expectation of privacy in property in which he has neither ownership nor any other legal interest." *United States v. Washington*, 573 F.3d 279, 283 n.1 (6th Cir. 2009) (citing *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990) (holding that a person's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable")). In some cases, courts have even extended the right to challenge a search to non-overnight guests

who keep personal items in the searched residence. *Id.*; *see United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005) (holding that a person who was never an overnight guest could challenge the search of his luggage bag in a friend's apartment where he showered, changed clothes, and kept some personal belongings).

Though overnight guests may have an objectively reasonable privacy interest, Allen was not an overnight guest. The uncontroverted facts before the Court are that Allen did not have permission to enter the apartment in which Shanteice Plummer was the sole legal tenant, nor did he have permission to store any of his possessions there. When officers first entered the apartment pursuant to the arrest warrant and detained Allen, he repeatedly stated that the apartment was not his and that it belonged to someone else who was at work. When Ms. Plummer arrived, she indicated that she was the apartment's only tenant. She also stated that she had problems with Allen's associate, Brandon Edwards, trespassing in her apartment while she was away. She said that she had not given Edwards or Allen permission to be in her apartment. The office manager for the apartment complex confirmed that Plummer was the sole tenant of the apartment and that Plummer had complained of Edwards' unauthorized entries into her apartment. *See, e.g.*, *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001) (holding that defendant could not challenge the legality of officer's entry into apartment because he "presented no evidence that he had been in the apartment for any period of time or for any purpose that would give rise to his having a legitimate expectation of privacy in that apartment").

Allen was a trespasser, not an overnight guest. He had no expectation of privacy in the apartment and no right to object to a search of the apartment. Allen had a connection to the apartment only by virtue of trespassing into the residence so that he could hide the cash proceeds of his drug-trafficking enterprise. As a trespasser, Allen cannot claim that he has a right to privacy

12
Case 1:18-cr-00004-TRM-CHS   Document 98   Filed 07/11/19   Page 12 of 13
PageID #: 629

because "[b]y definition, trespassers cannot have an objectively reasonable expectation of privacy in the property on which they are trespassing." *United States v. Washington*, 573 F.3d 279, 284 (6th Cir. 2009) (citing *United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998)); *United States v. Hunyady*, 409 F.3d 297, 302 (6th Cir. 2005) (rejecting defendant's argument that he had a legitimate expectation of privacy because he was "a trespasser under Michigan law at the time of the search in question."); *United States v. Sanchez*, 635 F.2d 47, 64 (2d Cir. 1980) ("[A] mere trespasser has no Fourth Amendment protection in premises he occupies wrongfully."); *United States v. Bell*, No. 1:12-CR-34, 2013 WL 1809818, at *5 (E.D. Tenn. Apr. 29, 2013) (concluding that defendant was not an overnight guest because he was trespassing upon the property).

Since a person can have no reasonable expectation of privacy in premises on which they are wrongfully present, Allen's status as a trespasser excludes him from Fourth Amendment protection. *See Rakas v. Illinois*, 439 U.S. 128, 143 n. 12 (1978). Accordingly, the undersigned **RECOMMENDS** that Allen's Amended Motion to Suppress [Doc. 84] be **DENIED** as to the search of Apartment 217 at 2001 Lyerly Street, Chattanooga, Tennessee.

## IV. Conclusion

For the reasons set forth above, the Court recommends that Defendant Allen's Amended Motion to Suppress [Doc. 84] be **DENIED**.[5]

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 149 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370 (6th Cir. 1987).